# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# HELENA DIVISION

| | |
|---|---|
| OLIVER EMANUEL PEARSON,<br><br>Plaintiff,<br><br>vs.<br><br>LARRY PASHA,<br><br>Defendant. | Cause No. CV 10-00035-H-DWM-RKS<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE TO DENY ALL MOTIONS FOR SUMMARY JUDGMENT |

This matter is pending on Plaintiff Oliver Pearson's Motion for Summary Judgment (C.D. 26) and Defendant Larry Pasha's Motion for Summary Judgment (C.D. 28). Mr. Pearson alleges Defendant utilized excessive force in violation of Mr. Pearson's federal constitutional rights thereby subjecting Defendant to liability under 42 U.S.C. § 1983.

Although Defendant presented significant evidence suggesting it is unlikely

a jury would find in favor of Mr. Pearson, in light of Mr. Pearson's allegation in his verified Complaint that Officer Pasha squeezed his genitals such that it brought tears to his eyes and the Court's ruling on the legal sufficiency of such an allegation, there remains a genuine issue of material fact. Both parties' motions should be denied.

I.  **SUMMARY JUDGMENT STANDARD**

A party is entitled to summary judgment if they can demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] That is, where the documentary evidence permits only one conclusion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

According to the newly amended Rule 56 of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those

---

[1] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56, Notes of Advisory Comm. on 2010 amendments.

made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

Thus, the party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, it believes demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a defendant files a properly supported motion for summary judgment, a plaintiff may not rest on their allegations alone to get to a jury without "any significant probative evidence tending to support the complaint." Anderson, 477 U.S. at 249 quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575 (1968). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-250 (internal citations omitted).

> The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]. The judge's inquiry, therefore, unavoidably asks whether reasonable

> jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

Anderson, 477 U.S. at 252. "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987). Only disputes over facts that might affect the outcome of the suit under the governing law are "material" and will properly preclude entry of summary judgment. Anderson, 477 U.S. at 248. At the summary judgment stage, the judge's function is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).

In the context of a motion for summary judgment where a litigant is proceeding pro se, the court has an obligation to construe pro se documents liberally and to afford the pro se litigant the benefit of any doubt. Erickson v. Pardus, 551 U.S. 89, 127 S.Ct 2197, 2200 (2007) (per curiam); Baker v. McNeil

Island Corrections Ctr., 859 F.2d 124, 127 (9th Cir. 1988).

## II. UNDISPUTED FACTS[2]

At all times relevant hereto, Plaintiff Pearson was an inmate at Montana State Prison (C.D. 2-1, p.1), and Defendant Pasha was a Correctional Officer employed by the Montana Department of Corrections, (DOC), at the Montana State Prison, (MSP). Officer Pasha has been employed at Montana State Prison since July 21, 2007. (C.D. 29-4--Pasha Aff. ¶1).

On July 15, 2009, as Mr. Pearson was leaving the dining hall, he was subjected to a pat search by Officer Pasha. (C.D. 2-1, p.1; C.D. 29-4--Pasha Aff. ¶6). On that same day, Mr. Pearson submitted an Inmate/Offender Informal Resolution Form, i.e., an informal grievance, stating that Officer Pasha "takes his time pat searching," and "rubs his hands all over my privates slow." (C.D. 8-1, p. 2; C.D. 29-1--Lamb Aff. ¶3 and Exhibit "A"). This informal grievance did not state that Officer Pasha had squeezed Mr. Pearson's genitals or that any physical

---

[2]Local Rule 56.1 requires any party filing a motion for summary judgment to file a Statement of Undisputed Facts. Mr. Pearson did not file a statement of undisputed facts with his motion but did file what can be construed as a statement of genuine issues. (C.D. 27). Accordingly, unless disputed by the record, the Court has utilized Defendant Pasha's Statement of Undisputed Facts in preparing the facts section below.

pain or discomfort had been caused during the pat search. (C.D. 8-1, p. 2; C.D. 29-1--Lamb Aff. ¶3 and Exhibit "A").

Mr. Pearson's informal grievance was treated as a complaint under the Prison Rape Elimination Act, (PREA). Lt. Chris Lamb was ordered to conduct an investigation into Mr. Pearson's allegations. (C.D. 29-1--Lamb Aff. ¶3). On July 22, 2009, Lt. Lamb interviewed Officer Pasha who stated that he did not know Inmate Mr. Pearson, he did not remember any altercations or verbal exchanges with any inmates in the vicinity of the low security dining hall on or about July 15, 2009, and he did not know of any reason why an inmate would claim that an altercation had taken place. (C.D. 29-1--Lamb Aff. ¶4).

Lt. Lamb then interviewed Mr. Pearson and asked Mr. Pearson to describe what happened on July 15, 2009. (C.D. 29-1--Lamb Aff. ¶5). Mr. Pearson stated he felt that Officer Pasha conducted the pat search too slowly. (C.D. 29-1--Lamb Aff. ¶5). According to Lt. Lamb, Mr. Pearson stated that Officer Pasha had touched his "junk " (a slang term for male testicles or genitalia). (C.D. 29-1--Lamb Aff. ¶5). Lt. Lamb stated that when he asked Mr. Pearson to describe the manner in which Officer Pasha had touched his groin, Mr. Pearson stated that Officer Pasha "squeezed my fucking junk." (C.D. 29-1--Lamb Aff. ¶5). Lt. Lamb says he

asked Mr. Pearson why he thought Officer Pasha was "out to get him," to which Mr. Pearson replied, "He always searches me," and that, "No other guards search me like that." (C.D. 29-1--Lamb Aff. ¶5). Lt. Lamb asked Mr. Pearson whether there were any other witnesses to the incident, and he identified inmate Will Kelley. (C.D. 29-1--Lamb Aff. ¶5).

Lt. Lamb then interviewed Will Kelley. (C.D. 29-1--Lamb Aff. ¶6). Inmate Kelley told Lt. Lamb that he did not really want to get involved. (C.D. 29-1--Lamb Aff. ¶6). Lt. Lamb instructed Inmate Kelley to write a statement about what he had seen. On July 22, 2009, Inmate Kelley wrote a one sentence statement which stated, "Office [sic] call Peason [sic] to search him and slowy [sic] search grooming his private and search slowy [sic]." (C.D. 29-1--Lamb Aff. ¶ 6, Exhibit "B"; C.D. 30--Kelley Aff. p. 13, line 25 - p. 14, line 7, and Exhibit "D").

Lt. Lamb concluded no sexual assault took place. (C.D. 29-1--Lamb Aff. ¶7). At this point, neither Mr. Pearson nor his witness, Will Kelley, ever said that Mr. Pearson was in pain or discomfort, that Mr. Pearson had ever complained of pain or discomfort, or that the pat search of July 15, 2009, was conducted in a manner that brought tears to Mr. Pearson's eyes. (C.D. 29-1--Lamb Aff. ¶7).

On January 12, 2011, Inmate Kelley gave a sworn statement to counsel for

Officer Pasha. In this statement, Inmate Kelley explained that he was in front of Mr. Pearson as they exited the chow hall on July 15, 2009. Kelley's attention was drawn back toward Mr. Pearson when he heard Mr. Pearson say something to the effect, "Why do you always pick me?" (C.D. 30--Kelley Aff. pp. 7-8, and 15). Kelley turned around and saw Officer Pasha performing a pat search on Mr. Pearson. Kelley did not see anything "out of line." (C.D. 30--Kelley Aff. p. 8). He "didn't see anything wrong with it." (C.D. 30--Kelley Aff. p. 9). He didn't see anything "uncommon" about the search. (C.D. 30--Kelley Aff. p. 10). He did not think the pat search was "improper." (C.D. 30--Kelley Aff. p. 10). He said, "I seen exactly what I normally see when somebody's getting patted down." (C.D. 30--Kelley Aff. p. 16-17). Kelley never heard Mr. Pearson say he was injured by the search, that he felt any physical pain, or that Officer Pasha had hurt him. (C.D. 30--Kelley Aff. pp. 10 - 11). Mr. Pearson did tell Mr. Kelley that Officer Pasha, "got a little too physical touching the groin area." (C.D. 30--Kelley Aff. p. 11).

All officers at MSP have had classroom and field training on how to conduct a proper clothed body pat search. (C.D. 29-3--Garcia Aff. ¶10). It is critical that the search be performed properly, thoroughly, and professionally. (C.D. 29-3--Garcia Aff. ¶ 10). To conduct a pat search properly, it is essential that the

abdomen, crotch and groin be manually palpated, as it is very easy for a male inmate to conceal objects in his underwear around his testicles. (C.D. 29-3--Garcia Aff. ¶13). Some officers are not comfortable performing a thorough search of the groin, but unless they do so, then they are not properly performing the search. (C.D. 29-3--Garcia Aff. ¶ 13). It is impossible to properly perform the clothed search of the groin without some contact between the officer's gloved hand and the inmate's clothed testicles. (C.D. 29-3--Garcia Aff. ¶ 13).

Officer Pasha has been used as a training guide on how to conduct a proper pat search. (C.D. 29-1--Lamb Aff. ¶8).

## III. ANALYSIS[3]

Where prison officials stand accused of using excessive force in violation of the Eighth Amendment, the Supreme Court has held that "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). An Eighth Amendment excessive use of force analysis requires two inquiries: (1) whether the official charged with inflicting force acted

---

[3]The parties' motions are filed on the same issue – whether Defendant Pasha used excessive force during the July 15, 2009 pat down search. Accordingly, the motions will be analyzed together.

with a sufficiently culpable state-of-mind; and (2) whether the force used was sufficiently serious to establish a constitutional violation. Hudson, 503 U.S. 1; Wilson v. Seiter, 501 U.S. 294, 298 (1991).

In order to determine whether the use of force was "wanton and unnecessary" the Court should consider the following factors: the need for application of force; the relationship between the need and the amount of force used; the extent of the injury inflicted; the threat "reasonably perceived by the responsible officials"; and "any efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 7, citing Whitley v. Albers, 476 U.S. 312, 321 (1986).

Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. But the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Hudson, 503 U.S. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)).

In his Complaint, Mr. Pearson alleged that Officer Pasha "would fondle your body and take his time pat searching you" and that during this pat search, Officer

Pasha used excessive force by, "squeezing [his] genitals bringing tears to [his] eyes." Pearson alleges he told Officer Pasha to stop because it hurt. (C.D. 2, p. 5).

In response, Defendant presented evidence that immediately after the incident Mr. Pearson indicated the pat search was conducted slowly. There was no mention of grabbing or that it brought tears to his eyes. In a subsequent interview, Mr. Pearson told Lt. Lamb that Officer Pasha "grabbed his junk." But again, there was no allegation that Officer Pasha had caused any pain.

Next, Defendant presented the sworn statement/interview of Will Kelley, an inmate whom Mr. Pearson alleged observed the incident. Mr. Kelley indicated there was nothing improper or unusual about the search. He testified the search only took about two or three seconds like a normal pat down search. (C.D. 30–Kelley Aff. p. 15). Mr. Kelley testified Mr. Pearson never mentioned being injured, he never said Officer Pasha had hurt him, and he never said he felt physical pain as a result of the search. Mr. Kelley testified that the only thing Mr. Pearson said was Officer Pasha, "got a little too physical touching the groin area." (C.D. 30–Kelley Affidavit, p. 11).

Third, Defendant presented undisputed evidence that pat down searches, such as the one at issue here, are necessary for the security of the prison and

necessarily involves contact with the genitals. The undisputed testimony was that to conduct a pat search properly, it is essential that the abdomen, crotch and groin be manually palpated, as it is very easy for a male inmate to conceal objects in his underwear around his testicles. (C.D. 29-3–Garcia Aff. ¶13). Moreover, Officer Pasha conducts thorough pat searches and has been used as a training guide on how to conduct a proper pat down search. (See generally C.D. 29-1--Lamb Aff.; C.D. 29-3--Garcia Aff.; C.D. 29-4--Pasha Aff.).

In response, Mr. Pearson provided no further information in support of his claim other than that contained in his Complaint. When faced with contradictory evidence from his own eye witness he presented the Court with no evidence or further discussion regarding the actual incident. Rather, Mr. Pearson cites to Mr. Kelley's written statement that Officer Pasha slowly searched and groomed Pearson's privates. (C.D. 27, p. 4, citing C.D. 27-1, p. 1). Mr. Pearson also argued that Defendant Pasha was being untruthful in his initial denials of a pat down search on July 15, 2009. (See C.D. 19–Answer, p. 2, ¶ 4 indicating Mr. Pasha "is currently without sufficient information to determine whether he performed a pat search on Pearson on July 15, 2009"). Given that Lt. Lamb interviewed Officer Pasha on July 22, 2009 regarding this incident (C.D.29-1--Lamb Aff., p. 3, ¶ 4), it

is somewhat suspect that Officer Pasha stated in his affidavit that he was unaware of Mr. Pearson's accusations against him until this lawsuit was brought to his attention in the Fall of 2010 (C.D. 29-4--Pasha Affidavit, p. 2, ¶ 3).  But that possible inconsistency does not substantially affect the summary judgment analysis.

A court does not get to decide contested issues of fact on summary judgment. The initial Findings and Recommendations in this case would have held that even assuming Mr. Pearson's most recent version of events is true, the alleged injury is de minimus, C.D. 5, p. 8, citing 42 U.S.C. § 1997e(e); <u>Oliver v. Keller</u>, 289 F.3d 623, 627-628 (9th Cir. 2002), and the Complaint failed to state a claim under 42 U.S.C. § 1983.  However, the Court has held that in most circumstances the squeezing of a man's genitalia is an act "repugnant to the conscience of mankind."  (C.D. 9, p. 5–Order of September 13, 2010 citing <u>Hudson</u>, 503 U.S. at 10).  Mr. Pearson has now alleged Officer Pasha squeezed his genitals so that it brought tears to his eyes. Officer Pasha denies the impropriety of the search and Mr. Kelley denies seeing anything improper.  This conflicting testimony creates a genuine issue of material fact under the Court's ruling.  A jury will be assembled to decide whether or how hard Mr. Pearson was squeezed.

## IV. CONCLUSION

Neither party has established the absence of a genuine issue of material fact. Accordingly, the Court will recommend both parties' motions for summary judgment be denied.

At all times during the pendency of this action, Mr. Pearson SHALL IMMEDIATELY ADVISE the Court and opposing counsel of any change of address and its effective date. Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS." The notice shall contain only information pertaining to the change of address and its effective date. The notice shall not include any motions for any other relief. Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Based on the foregoing, the Court issues the following:

### RECOMMENDATIONS

1. Plaintiff Pearson's Motion for Summary Judgment (C.D. 26) should be denied.

2. Defendant Pasha's Motion for Summary Judgment (C.D. 28) should be denied.

# NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. As this deadline allows a party to act after the Findings and Recommendations is served, it falls under Fed.R.Civ.P. 6(d). Therefore, three (3) days are added after the period would otherwise expire.

Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed

until entry of the District Court's final judgment.

DATED this 2nd day of June, 2011.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge